Hon. MILO L. BENNETT,
Hon. LUKE P. POLAND,
Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,

} ASSISTANT JUDGES.

---

PIERCE, CLARK & CO. *v.* EBENEZER A. KNIGHT.

*Application of payments. Guaranty.*

If both the debtor and the creditor omit, until after suit brought, to make any particular application of the former's payments, the application is then to be made by the court, and it will be made without particular regard to the interest or supposed wish of one party more than the other, but in accordance with what is just and equitable between both.

In the case of an open account, general payments made under such circumstances will be applied, in the order of time they were made, to the charges in the order they accrued.

Therefore, in the case of a guaranty by a third person of the purchases of the debtor, all the purchases being charged to the latter in account, if sufficient has been paid on account generally to pay for the purchases made under the guaranty and previously thereto, and no particular application of such payments has been made by either party before suit brought, the debt arising under the guaranty will be considered cancelled, and the payments can not be applied to items of account accruing subsequently to that debt for the purpose of keeping that unsatisfied.

Pierce, Clark & Co. *v.* Knight.

ASSUMPSIT upon a guaranty executed to the plaintiffs by the defendants, in the following words:

"SPRINGFIELD, Vt. October 25, 1852.

Messrs. PIERCE, CLARK & Co., Gents: I will become reponsible to you for eight hundred dollars on account of Leveret M. Snell.      Very Respectfully Yours,      E. A. KNIGHT."

The defendant pleaded the general issue, and the cause was tried by the court, at the May Term, 1858,—REDFIELD, Ch. J., presiding.

On trial it was conceded that the foregoing guaranty was executed by the defendant and accepted at its date by the plaintiffs, and that they, in reliance upon it, sold to Snell goods to the value of eight hundred dollars, and that the defendant was notified by the plaintiffs of their acceptance of the guaranty.

The whole dealings between the plaintiffs and Snell are shown by the following account:

| Dr. | L. M. SNELL to PIERCE, CLARK & Co. | | | Cr. |
|---|---|---|---|---|
| May 1852, To M'd'ze. | | | $77.38 | |
| June " " " | | | 89.25 | |
| July " " " | | | 21.18 | |
| Sept. " " " | | | 769.64 | |
| Oct. " " " | | | 177.27 | |
| Nov. " " " | | | 11.43 | |
| Dec. " " " | | | 16.28 | |
| Jan. 1853 " " | | | 77.65 | |
| Feb. " " . " | | | 247.19 | |
| April " " " | | | 837.66 | |
| May " " " | | | 20.06 | |
| June " " " | | | 40.47 | |
| Sept. " " " | | | 1139.92 | |
| Oct. " " " | | | 45.81 | |
| Nov. " " " | | | 60.01 | |
| Feb. 1854, " " | | | 13.33 | |
| April " " " | | | 1028.47 | |
| May " " " | | | 35.08 | |

| Cr. |
|---|
| Oct. 1852, By Cash $7.00 |
| Dec. " " " 10.00 |
| Jan. 1853, " " 160.00 |
| Feb. " " " 70.00 |
| April " " " 703.89 |
| Aug. " " " 120.00 |
| Sept. " " " 510.00 |
| Oct. " " " 90.00 |
| Feb. 1854, " " 169.04 |
| March " " " 100.00 |
| April " " " 700.00 |
| May " " " 812.00 |

$4708.08                              $3451.93

The county court being of opinion that when a debtor makes

payments without directing their application, it is competent for the creditor, in a matter of account, to apply them to that portion of the account which is not secured, or to that which is of the longest standing, rendered judgment for the plaintiffs for eight hundred dollars and interest from the commencement of the action, to which the defendant excepted.

*H. Closson*, for the defendant.

*A. P. Hunton*, for the plaintiffs, cited *Noyes & Co.* v. *Nichols*, 28 Vt. 159; *Ayer* v. *Hawkins*, 19 Vt. 26; *Shedd* v. *Wilson*, 27 Vt. 478.

POLAND, J.    The defendant's guaranty, upon which this action is brought, is not claimed to be of the character called a continuing guaranty, so as to bind the defendant for the payment of any general balance that might be due the plaintiffs from Snell.

It is not declared upon as a continuing guaranty, and was not so treated in the county court.

The defendant then by his guaranty became responsible to the plaintiffs for the first eight hundred dollars worth of goods they sold to Snell, after the date of the guaranty.

It having been conceded in the county court that the defendant executed the guaranty, that the plaintiffs accepted it, and upon the strength of it sold to Snell goods to the value of eight hundred dollars, and that the defendant had notice of the acceptance of the guaranty, and sale of the goods, the plaintiffs were entitled to recover, unless the goods sold to Snell and covered by the defendant's guaranty, were paid for by Snell.

It appears by the accounts between the plaintiffs and Snell which are made part of the case, that at the date of the defendant's guaranty, Snell was indebted to the plaintiffs in nearly the sum of one thousand dollars for goods, purchased from time to time, which were charged to him in general account, and that he continued to make further purchases of them afterwards, up to the spring of 1854, all of which were charged to Snell upon the same account, when the debit side of his account amounted to four thousand seven hundred and eight dollars and eight cents ($4708,08).

Snell made various payments to the plaintiffs from the date of the defendant's guaranty up to the close of his purchases of them, amounting in all to the sum of three thousand four hundred and fifty-one dollars and ninety-three cents ($3451.93), all of which were credited to him by the plaintiffs generally on account, and no designation or appropriation whatever, was made of any of the payments to any particular portion of the account. It does not appear from the case that Snell, at the time of making any of these payments, directed their application to any particular portion of the account, nor does it appear that the plaintiffs applied the payments made by Snell in any way excepting by crediting the same on his general account, up to the time of the trial in the county court.

The payments made by Snell were more than sufficient to pay the amount due from him to the plaintiffs, before the defendant's guaranty, and the first eight hundred dollars of his account which accrued after it, and the defendant claims the payments should be so applied.

There is, perhaps, no branch of the law where there is a greater diversity of decision than in relation to the application of payments. All authorities agree that the party making the payment has the right in the first instance to direct its application to either of several debts, or to any particular part of a debt, where such application is capable of being made; and that the party receiving the payment is bound to apply it as directed. This right, however, must be exercised at the time of making the payment, and if omitted to be exercised then, it is lost, and can not be made available afterwards.

If the debtor omits to direct any application at the time, then the right to make the application devolves upon the creditor, and it was formerly supposed that he might make such application as he chose, upon or between different debts, or different portions of the same debt. This right was carried so far in some cases as to hold that where a general payment was made, the creditor might apply it in payment of an equitable debt merely, and keep on foot a legal debt, and even that he might apply it on a debt barred by the statute of limitations, in preference to one not barred.

But this right of the creditor has been much narrowed by some decisions in this State. In *Ayer* v. *Hawkins*, 19 Vt. 26, the plaintiff held several notes against the defendant, all of which were barred by the statute. The defendant made a general payment to the plaintiff without directing any application. The plaintiff indorsed a portion of the money so paid upon each of the defendant's notes. It was held that the plaintiff had no right to make such application of the payment, and it was said by the court, "that if the debtor silently waives his right to direct the application in favor of the creditor, it should be intended that he does so relying upon a mode of application to which he could not justly or reasonably object." In the case of *Wheeler* v. *House*, 27 Vt. 735, the plaintiff held two notes against the defendant, bearing the same date, for the same sum and payable at the same time, both of which were conceded to be valid and legal debts. The defendant made a general payment to the plaintiff of a sum not sufficient to pay either note in full. The plaintiff indorsed one-half the payment on each note. It was held that the plaintiff had no right to make such application, but should have applied the whole payment on one note. This case is directly opposed to several cases in Massachusetts, and some in other States, and is probably unsustained by any adjudged case. This decision was made upon the ground that though the debtor had omitted to direct any application, still, the creditor was bound to make such application as he might reasonably suppose would be satisfactory to the debtor, and such as he would acquiesce in if consulted in reference to it. This is certainly a very great restriction of the creditor's right as held by the English courts, and in other States.

There is a great conflict also in the cases, as to *when* this right of appropriation is to be made by the creditor. None of the cases seem to require it to be done at the *very time* of receiving the payment.

Some of the cases say it must be done in a *reasonable time*. Some that he may make it at any time *before a controversy arises*; and some that it may be made any time *before suit brought*. Many of the English cases, especially later ones, hold that the creditor's right to appropriate a general payment may be exercised, even at the trial, when he has omitted to make it before. The general

course of decision in this country, and we think the more reasonable rule is, that it should be exercised before suit brought, and that if not made then, the application is left to be made by the law. From what is said in the exceptions, and from the manner in which the plaintiffs kept their accounts with Snell, we infer that the plaintiffs never made any designation or application of any of the payments made by Snell to any particular portion of the account, except that they claimed the right to do so at the trial. As already stated, this was too late, and the power of the plaintiffs to direct the application was gone. The exceptions say the court were of opinion that the plaintiffs might apply the payments if they chose to that part of the account not secured. If this had been done before suit brought, I should not entertain any doubt of their power to do it, were it not for the recent restrictions upon the creditor's right as held in this State.

Upon the facts stated, we regard this as a case where neither the debtor or the creditor made any application of the payments within the time they had the power to do so, so that the application was left to be made by the court upon such principles as the law recognizes when neither party has made any designation.

Here also there is a very great conflict in the cases as to the rule by which courts should be governed in directing the application of payments. The rule of the civil law in such cases was, that such application should be made as was most beneficial to the debtor. The general course of decision in the English courts under the common law has been, that such application would be made by the law as the creditor would have made, or which it is for his apparent interest to have made.

Decisions in this country have been made in accordance with both of these rules, and in disregard of both, establishing a medium rule between both. The rule has not been uniform in this State; in *Briggs* v. *Williams*, 2 Vt. 283, the rule of the common law was followed, and it was held that the court would direct payments to be applied on those debts which were not secured, in preference to those which were, as this was for the apparent interest of the creditor. HUTCHINSON, J. dissented however, and held that the debtor ought to have been allowed to direct the application even at the trial, as the plaintiff had made none before.

In *Robinson et al.* v. *Doolittle et al.*, 12 Vt. 246, REDFIELD, J., in delivering the opinion of the court, expressed his opinion that the rule of the civil law, regarding the interest and supposed wish of the debtor as to the application, was the more just and equitable rule. The rule adopted in the case, however, was, that in such case the law would make such application as it deems just and equitable.

In *Emery* v. *Tichout*, 13 Vt. 15, the court made an application of payments in a particular manner, by inferring from circumstances that such was the mutual understanding of the parties. BENNETT, J. dissented from this conclusion of the majority of the court, and in his dissenting opinion says, that the weight of authority, as he thinks, is in favor of the civil law rule, that the application most beneficial to the debtor be made. The current of decisions in this State however, and in the American courts generally, is in favor of the rule as laid down in *Robinson* v. *Doolittle*, that where both parties neglect to direct the application of payments, the courts will not look particularly to the interest or supposed wish of one party more than the other, but will make such application as is just and equitable between them. This rule commends itself by its impartial justice, and neither party who has omitted to make the application himself, can justly complain of it.

Among the cases where courts have been called upon to make the application, is that of open current accounts, consisting of different items of debt and credit blended in one account. Where the dealings of parties are kept in this way, the different items are not considered as distinct and several debts, but as all constituting but one entire account, the balance of which is the debt between the parties.

The rule of application in such cases has, perhaps, been more uniform and invariable than in almost any other case, and that is (where there is nothing to show a different intention by the parties) that the payments shall be applied in the order of time they were made, to the charges in the order they accrued; the earliest credits to pay the earliest charges. This is done because it is most just and equitable between the parties, and also because when no different intention has been expressed, such is presumed

to be the intention of both parties, as being in accordance with the ordinary and usual course of dealing. See *Shedd et al.* v. *Wilson et al.*, 27 Vt. 478, and cases cited by the court.

Now if the plaintiffs had sued Snell on this account, there would not seem to be any question but what this rule of application should prevail; and why should the rule not be the same between these parties? The evidence of intention drawn from this mode of keeping the accounts is just as strong in the one case as in the other.. If the interest of the plaintiffs were alone to be consulted, and their supposed wishes regarded in the application to be made, it might well be claimed that the application should be made to that part of the account not secured, in preference to that which is. On the other hand, it may as consistently be claimed that the choice and intention of the debtor was, that the payments should be applied on the accounts in the usual and ordinary mode of the order of the charges, and operate to relieve his surety from the obligation imposed by his guaranty.

The mode in which the plaintiffs kept their accounts with Snell tends strongly to show they must have so understood it. While on the one hand we should not feel bound to change the mode of applying payments between two parties, for the purpose of relieving a surety, on the other, considering the favor with which the law regards sureties, we think we ought not to depart from the ordinary legal rule, for the purpose of casting a burden upon him. Applying the payments made by Snell in this manner, the plaintiffs were more than paid their account due from Snell at the date of the defendant's guaranty, and all that was covered by the guaranty; and as the case is shown by the exceptions, we think the judgment below was erroneous, and the same is therefore reversed, and the case is remanded for a new trial.