Hurd *v.* Spencer.

---

## REUBEN T. HURD *v.* DANIEL SPENCER.

*Promissory Note.  Consideration.  Substitution.*

Where a creditor has security for a debt placed in his hands by the principal, on which the surety has a right to rely, he has no right to part with it, or appropriate it to any other purpose, without the consent of the surety, and if he do so, he thereby discharges the surety to the amount of the value of such security.

A. furnished B. with sheep to drive to market, upon condition that they should remain A.'s until paid for, B. agreeing to secure A. to a certain amount against loss thereon. For this purpose, B. delivered certain property to A., and gave him two notes, one of $300., and one of $500., signed by C., as security, C. knowing of said agreement. B. drove the sheep to New York, and sold two lots for $2754.37, and took checks payable to A., and sent the same to A.  A. applied no part to pay said notes, but credited the whole amount to B. on book, B. being

indebted to A. on account of said sheep and other stock. The speculation proved unprofitable, and B. failed. B. informed C. that he had paid said notes with said checks. Afterwards, A. claimed to C. that they had not been paid, and C. executed the note in suit of $800. under an arrangement between A. B. and C., for which no consideration was received except that of the other two notes. *Held,* that C. was entitled to have the original agreement upon which the first two notes were given, carried out by A.; that said checks should be applied in payment of the sheep for which they were received by B., and also all the other property delivered to A. as security, and if the whole was sufficient to pay for the sheep for the security of which the first two notes were given, then the $800. note was without consideration.

THIS was an action of assumpsit, on a promissory note. Plea, general issue, and trial by the court, by agreement, at the December Term, 1867, PROUT, J., presiding.

The execution and delivery of the note declared upon was conceded by the defendant, but he claimed that it was without consideration, and was given upon a fraudulent misrepresentation of the plaintiff to the defendant, as to the non-payment of two other notes before that time given to the plaintiff—one for the sum of three hundred dollars, and the other for five hundred dollars—and given by one Robert L. Stickles, and which the defendant had signed as surety for said Stickles; and which constituted the consideration for which the note declared upon was given by the defendant.

It appeared on trial, that on or about the 1st of July, 1866, the said Stickles entered into an agreement with the plaintiff, by which the plaintiff was to furnish said Stickles sheep to drive in the following autumn, to Columbia county, N. Y., to sell, the price of which was to be agreed upon before they left Arlington, Vt., where the plaintiff resided, and which were to remain the property of the party furnishing them, until the price thus to be agreed upon was fully paid. It was further agreed that Stickles was to secure the plaintiff to the amount of about one dollar per head on the sheep furnished him, for the purpose of indemnifying the plaintiff or party furnishing the sheep against all contingencies that might occur, and resulting in a loss upon the sheep thus furnished. This agreement was dependent upon the assent of one Crawford Woodard, who was interested in the sheep to be thus furnished by the plaintiff to Stickles, and a joint owner thereof, and who subsequently, and before any delivery of

sheep to said Stickles, assented to the agreement, but was to accompany said sheep to Columbia county, and receive the avails thereof to an amount sufficient to pay for them. On or about the 11th of July, 1866, Stickles, under the arrangements aforesaid, agreed with the plaintiff upon the price of four hundred and twenty-three sheep, and which the plaintiff and Woodard furnished him, and amounting to $1519., three hundred and fifty-three of which Stickles, by arrangement, drove to his pasture to keep until fall, leaving the remainder of the lot, seventy in number, which were culls, with the plaintiff. On this occasion, Stickles delivered to the plaintiff a colt worth $119., and procured and sent to the plaintiff, the three hundred dollar note, above referred to, and signed by himself and the defendant, and which was made payable to said Woodard, or order, ninety days from date, at bank in Troy, N. Y., which colt and note were delivered the plaintiff, for the purpose of securing the said plaintiff and Woodard as provided by the contract above stated. The defendant had no interest in said contract, nor had he any security for signing either this or said five hundred dollar note.

Before driving the aforesaid lot of sheep to market, and on or about the 22d day of September, 1866, Stickles agreed for another lot of two hundred sheep, and on or about the 2d day of October, 1866, for still another lot of four hundred and forty-two sheep and lambs with the plaintiff and Woodard, and amounting to about $1560., upon the same terms and conditions upon which he received the first lot, which were also to be driven to said Columbia county to sell, and on or about the latter date, Stickles delivered to the plaintiff, for the security of the plaintiff and Woodard, as aforesaid, with respect to these sheep, the note given for five hundred dollars, signed by himself and the defendant, made payable to the plaintiff, or order, at bank in Troy, aforesaid, sixty days from its date. All the sheep thus furnished, with the exception of said seventy culls, were driven to Columbia county by said Woodard and one Clark Matteson, the hired man of Stickles, by his direction, who followed some days after, and seasonably overtook them. Before leaving home for Columbia county, for the purpose of selling said sheep, Stickles, who is an illiterate man, and can neither read nor write, caused a letter to be

written and sent to the plaintiff, in which he requested the plaintiff to take up and pay the said note given for three hundred dollars, signed by him and the defendant, as above stated, as it would become due before he, (Stickles,) could return, it having been discounted at said bank in Troy, and which the plaintiff did pay said bank after it had been protested. On arriving at Columbia county, Stickles, with the assent of Woodard, sold one Cornelius Clum, two lots of the sheep aforesaid, one lot for which the said Clum gave his check for the sum of $2000., and the other for which said Clum gave his check for $754.37, both made payable to the order of the plaintiff, and both of which Stickles delivered to Woodard, who returned home the next day, the said Stickles remaining to dispose of some other stock he had for sale, giving him, Woodard, express directions to tell the plaintiff to apply the avails of said checks to satisfy and pay the said notes, signed by himself and the defendant, and given for three hundred and five hundred dollars respectively, and the balance to credit him, to which said Woodard replied, it shall be all right. Woodard, on his return home, delivered both checks to the plaintiff, but did not communicate to the plaintiff what Stickles said to him with respect to the application of the money. The plaintiff received the money on the checks, but applied no part thereof in payment of said notes, or either, but credited the amount to Stickles on book. Stickles at that time, and is now, indebted to the plaintiff and Woodard on account of said sheep furnished him as aforesaid, for a span of horses, harnesses, and two hundred and eighty other sheep, and which they had let Stickles have, and which he had taken and sold in said Columbia county that fall, to an amount considerably in excess of the amount named in said checks, and the amount of the two notes signed by the defendant as above stated.

The speculation proved unfortunate, and resulted in a loss, and in the failure of Stickles, and he is in fact insolvent, and unable to pay his debts. Soon after his return home from Columbia county, and prior to the giving of the note declared upon, he fully informed the defendant of his directions to Woodard to apply the avails of said checks in payment of said notes, signed by the defendant, and that he had paid them in that manner. On the day said note was given

by·the defendant, he was again informed by Stickles of the fact, and and that said notes had been paid, and before he executed and delivered it to the plaintiff. But it also appeared that both Stickles and the defendant, on the day of the date of said note, which is in controversy in this suit, were at the plaintiff's when the question of the payment of said notes first above referred to was a subject of conversation between the parties, when the plaintiff claimed they had not been paid, and said to the defendant that they had not been unless he, (the defendant,) had paid them himself. The plaintiff made no other representation with respect to the matter. On this occasion Stickles was present, when the matter was arranged by the defendant, giving the note in suit and collaterals securing its payment, and as late as May, 1867, the defendant promised the plaintiff's agent to pay it. This note was given with the knowledge of Stickles, and with his assent, although he claimed that it had been paid, as above stated. Nothing was said by the defendant expressly waiving his right to have the application of the payments thus made upon the notes as directed by Stickles, nor were the notes of $300 and $500 given up to the defendant or Stickles on that occasion, or since ; nor did it appear that they were originally given to secure the payment of any balances, except upon the specific lots of sheep above referred to.

Upon these facts the county court decided and held, that the note declared upon was given upon a sufficient consideration; that the defendant was not induced to give it in consequence of any fraud or misrepresentation on the part of the plaintiff, and that if said Stickles had the right to direct an application of the avails of said checks to the payment of said notes, that Stickles and the defendant, who was informed as to all the material facts relating thereto, in law waived their right to control or direct its application, but consented to the application that was made by the plaintiff, and rendered a judgment for the plaintiff for the amount of the note declared upon,—to which decision of the court the defendant excepted.

*Wm. T. Southwick, C. N. Davenport* and *A. M. Huling,* for the defendant.

38

*Burton & Munson,* for the plaintiff.

. The opinion of the court was delivered by

PECK, J.   In order to determine on what consideration the eight hundred dollar note in suit rests, it is necessary to look back to the original agreement and transaction out of which it grew.   It was nominally given on account of the three hundred dollar note and the five hundred dollar note which the defendant had previously executed to the plaintiff with, and as surety for Stickles under the sheep contract between Stickles and the plaintiff and Woodard.   The sheep which Stickles received of Hurd & Woodard to take to Columbia county, New York, to sell, were bought conditionally by Stickles, to remain the property of Hurd & Woodard till paid for, Woodard to accompany the sheep and receive the avails of the sale to an amount sufficient to pay for them.   It was further stipulated in that contract that Stickles should, in advance, secure Hurd & Woodard to the amount of one dollar a head on the sheep, to guard Hurd & Woodard against the contingency of a loss on the sheep by the re-sale of them.   In fulfilment of this last named stipulation, Stickles delivered to the plaintiff a colt worth one hundred and nineteen dollars, and procured the defendant to execute with him the three hundred dollar note, and the five hundred dollar note which were delivered to the plaintiff, the defendant being a surety, which, from the nature of the transaction and the terms of the sheep contract, must have been known to the plaintiff.   It further appears that the defendant had no security for signing the notes.   The defendant had a right to rely on the faithful performance of the agreement on the part of Hurd & Woodard in retaining and applying the security in their control and possession to the payment for the sheep.   This duty on the part of Hurd & Woodard to see to such application is a duty which they owed to the surety, growing out of the relation of the parties.   When a creditor has security placed in his hands by the principal on account of the debt, and on which the surety has a right to rely, he has no right to part with it or appropriate it to any other purpose, without the consent of the surety ; and if he does so he thereby discharges the surety to the amount of the value of such security.  · Therefore the two checks

amounting to two thousand, seven hundred and fifty-four dollars and thirty-seven cents, which the plaintiff received out of the avails of the sale of the sheep in Columbia county, operated as payment upon the three lots of sheep, on account of which the three hundred dollar note and the five hundred dollar note were given. The colt, the value of which is stated in the case at one hundred and nineteen dollars, being delivered to the plaintiff for the same purpose for which these two notes were given, must be applied in the same way as the checks, and also the value of the seventy sheep left with the plaintiff. The plaintiff had no right to apply either of these sums in any other way, or appropriate them to any other debt against Stickles, to the prejudice of the surety.

If we assume that the seventy sheep left by Stickles with the plaintiff were an average value of the entire lot of which they were parcel, these two notes were fully paid, and the eight hundred dollar note in suit, is, as to the defendant without any actual consideration. The plaintiff was not, by the original agreement, bound to apply these sums specifically upon these notes, if by doing so it would leave a balance still due for the sheep, as there two first notes were given to secure any balance which might be due over and above the proceeds of the sale of the sheep in New York; and that agreement should be carried out.

It is claimed on the part of the defense, that the direction of Stickles to Woodard, when Woodard received the checks, to tell the plaintiff to apply them in payment of the three hundred dollar note, and the five hundred dollar note, and credit him with the balance, and Woodard's reply, " *it shall be all right,*" made it the duty of the plaintiff to make such application, especially as Woodard was jointly interested with the plaintiff. If these checks had been the absolute property of Stickles, this position would be sound. So too, if Woodard and Stickles mutually understood at that time. that such application should be made, or if Woodard knowingly suffered Stickles so to understand it, and the defendant relying on Stickles statement to him soon after, that the notes were paid, thereby lost the opportunity of securing himself. But we leave this point undecided till the facts are more fully stated. But upon the other ground already stated,

the two first notes were either fully, or very nearly paid. Whether anything remained due upon them depends on the value of the seventy sheep, (the culls of the first lot,) the value of which the case does not find. The only consideration of this eight hundred dollar note is what remained due, if anything, on the two former notes at the time this note was given.

But it is insisted that the giving of the eight hundred dollar note was a waiver of the defence to the two former notes on account of which it was given, and that for the purposes of a consideration of this note, they must be regarded as wholly due and unpaid. But upon the facts stated, the new note is but a substitution for the other notes, and is open to the same defence that attached to them. The judgment must, therefore, be reversed. If the value of the seventy sheep appeared, we could proceed and render final judgment; but as that value is not found, and cannot be assumed, the case must be remanded.

Judgment reversed, and new trial granted.