No. 19,502.

CENTRAL SURETY AND INSURANCE CORPORATION *v.* AMERICAN EMPLOYERS' INSURANCE COMPANY.
(370 P. [2d] 455)

Decided April 2, 1962. Rehearing denied April 23, 1962.

Messrs. WAGNER and WYERS, for plaintiff in error.

Messrs. McCOMB, ZARLENGO and MOTT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS is an action between two bonding companies on a surety bond. The parties appear here as in the trial court and will be referred to as "Central" and "American" respectively. Others, not parties to this action but whose names appear are Trans Western Construction Company called the "prime contractor," the United States called the "government," Richard Culna a "sub-contractor" called "Culna," and a materialman named "Beach."

The record discloses the following facts:

On June 29, 1956, the prime contractor entered into a construction contract with the government to replace certain entrance steps, and to do other work at Fitzsimons Army Hospital in Colorado. This contractor in turn sub-contracted part of the work to Culna.

In accordance with The Miller Act (49 Stat. 793, 40 U.S.C.A. §270a) the prime contractor furnished a combined performance and payment bond in the amount of

$42,141.00, which it procured from Central. Culna was required to furnish a similar bond which he purchased from American in the amount of $7500.00.

Under his contract with Central the prime contractor assigned to Central all its interest in its sub-contracts and "also all rights, claims and demands against any surety or sureties on bonds furnished by sub-contractors."

Culna's sub-contract required not only "a 100% performance and payment bond" but also required him to "assume toward (the prime contractor) all the obligations and responsibilities that (the prime contractor) * * * assumes toward the (government) * * * by virtue of the prime contract."

The pertinent wording in Culna's surety bond reads: "Whereas, said Principal has entered into *a certain contract* in writing * * * with the said Obligee for the stuccoing of 15 buildings at Fitzsimons Army Hospital, Colorado, *a copy of which is or may be attached hereto, and is hereby referred to and made a part hereof.* Now, therefore, the condition of this instrument is such that if the Principal indemnifies the Obligee against loss or damage directly arising by reason of the failure of the Principal faithfully to perform the above mentioned contract, then this instrument shall be null and void; otherwise it shall remain in full force and effect." (Emphasis added.)

Both section 270b of The Miller Act and the government's contract with the prime contractor expressly provide for the protection of persons supplying labor or materials to the government.

Under his sub-contract Culna caused Beach to deliver materials of the value of $1925.57 to be used by him on this job, for which he failed to pay. Shortly thereafter Culna became insolvent and Beach gave notice to the prime contractor and sued Culna as well as Central. The latter was joined by virtue of The Miller Act. About the same time the prime contractor also became insolvent, precluding recovery against either it or Culna.

Central thereafter admitted liability, paid $1900.00 to Beach in settlement, and received Beach's assignment of its claim.

Central then sued American to recoup its loss, relying on two grounds:

1. The indemnity agreement with the prime contractor and the assignment to it of that contractor's rights; and

2. The assignment to it of Beach's materialman's rights.

American denied liability and counterclaimed by way of a set-off against the prime contractor. It was later incorporated in the stipulation of facts that the contractor was indebted to American in excess of $2,000.00 for money paid out on four separate and other Miller Act bonds on which the prime contractor was principal and American was surety.

No testimony was taken at the trial and the case was heard solely as a matter of law based upon the stipulation of the parties. Following hearing the trial court dismissed the complaint and entered judgment for defendant.

Plaintiff by writ of error seeks reversal.

We conclude that the assignment from Beach of its materialman's claim clothed Central with a proper ground of recovery. This is so because American's bond inured to the benefit of Beach, and he thereby became a third party beneficiary. Such rights have long been recognized in Colorado, *Haldane, et al, v. Potter,* 94 Colo. 558, 31 P. (2d) 709 (1934). This is also the general rule in the United States. See 4 *Corbin on Contracts* §798 at page 163 (1951). The rule as to third parties under surety bonds is stated by Corbin as follows:

"* * * [T]he third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him."

It is generally recognized that a bond which refers to a contract should be construed in connection with that contract in order that the nature and extent of the

obligation thereunder can be more readily determined. *Bristol Steel & Works v. Plank,* 163. Va. 819, 178 S.E. 58 (1935), *Covey v. Schiesswohl,* 50 Colo. 68, 114 Pac. 292 (1911).

 American's bond expressly referred to and incorporated in it the sub-contract, and the latter in turn incorporated in it by reference the terms and conditions of the prime contract requiring materialmen to be paid — thus Culna's bond was for Beach's benefit as well as that of the prime contractor. Beach could have sued thereon, and Central, standing in Beach's shoes, has the same right.

Since it was not shown that Beach was indebted to American, no set-off can be claimed as against Central suing on the assignment from Beach. In view of our conclusion it is not necessary to determine whether set-offs claimed by American against Central on other claims are valid.

The judgment is reversed with directions to enter judgment for Central for the amount of the Beach assignment.

MR. JUSTICE MOORE and MR. JUSTICE HALL concur.