# Westinghouse Electric Supply Company v. B. L. Allen, Inc., and The Travelers Indemnity Company

[413 A.2d 122]

No. 147-78

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed February 5, 1980

*Harry A. Black* of *Black & Plante, Inc.,* White River Junction, for Plaintiff.

*Frank G. Mahady,* White River Junction, for Defendant Travelers Indemnity Co.

Billings, J. This case arises out of debts incurred in the construction of a performing arts center at Bennington College. In order to meet its construction obligation, the general contractor for the arts center, Granger Construction Corporation (Granger), subcontracted with B. L. Allen, Inc. (Allen) for certain electrical work. Allen's electrical supplier for this and other jobs was the plaintiff-appellee, Westinghouse Electric Supply Company (Westinghouse). The appellant, The Travelers Indemnity Company (Travelers), was the surety on a payment bond with Granger and Bennington College.

In the course of performance, Allen did the electrical work and was paid by Granger. Allen, however, came into financial difficulties during this time. In May of 1974, Westinghouse was alerted to the fact that Allen, which owed the plaintiff about one quarter of a million dollars for supplies used in several jobs including that at Bennington College, was having difficulty collecting money owed it. Westinghouse's credit manager met with Allen's principal on three occasions—May 13, June 5, and July 3, 1974—to discuss a payment schedule for Allen. The transcript reveals that they also "reviewed the financial condition of the company with the accountant" for Allen, but there is no evidence drawn to our attention which reveals that Westinghouse was ever informed of the terms or nature of the Travelers bond, that the bond covered Allen's obligations to Westinghouse, or that amounts forwarded to Westinghouse had been paid by Granger to Allen.

The agreed payment schedule called for a series of payments to be applied on a first-in, first-out basis against Allen's oldest outstanding debts with Westinghouse. From the date of the first meeting to the commencement of this action, $130,000.00 of Allen's checks to Westinghouse were dishonored by drawee banks. However, on June 30, 1974, a district sales agent for Westinghouse executed a document captioned "WAIVER OF LIEN," which purports to release Allen from any claims for materials supplied and used on the Bennington College job in consideration for $36,003.53. No original of this document was ever found, but Westinghouse did produce a copy. The signing agent testified that he had on occasion filled out such waiver forms upon receipt of checks in payment of his customer's debts, and then for-

warded the form with the checks to the credit office. There was evidence that if the checks cleared, the credit office would deliver the waiver form by way of a receipt to the customer, but if the checks were dishonored the waiver form was generally destroyed. One of the checks sent to the credit department at the time the waiver form was apparently executed was not honored. There was no evidence that the waiver was ever delivered to the debtor. Furthermore, there was no evidence that the sales agent had the authority to settle or manage accounts, that the sales agent knew of the outstanding balance due from Allen, or that the credit department ever received the original waiver form.

The case was heard below against Travelers only, because Allen made no appearance. Westinghouse obtained a judgment for $69,948.82 plus interest and costs, from which Travelers appeals. It contends that the trial court erred in (1) admitting the payment bond into evidence; (2) conditioning the use of the waiver as an admission upon proof of its delivery to Allen; (3) instructing the jury about Westinghouse's duty and manner of allocation of Allen's payments to the Bennington College job, and (4) admitting as a Westinghouse exhibit a computer printout listing Allen's debts on the Bennington College job.

The payment bond sets forth the liability of Granger, principal, and Travelers, surety, jointly and severally. They are bound to pay as follows:

> [I]f the principal shall promptly make payment to *all . . . corporations* furnishing materials for . . . the prosecution of the work provided for in such contract . . . *including all amounts due for materials . . . consumed or used in connection with the construction* of such work . . . *whether performed by subcontractor or otherwise . . .* then this obligation shall be void; otherwise to remain in full force and effect. (Emphasis added.)

The phrases "shall promptly make payment to all . . . corporations" and "whether performed by subcontractor or otherwise" indicate an intent by the signatories that the obligation of the surety should extend to remote creditors of the principal insofar as the underlying debts arise in connection

with the Bennington College job. In an agreed statement of facts, the parties state that Allen was a subcontractor on this job and that Allen owes Westinghouse for materials supplied for the Bennington College job. Clearly then, the language of the bond binds Travelers as surety for the payment of any materialman supplying the principal or the subcontractor, Allen.

This interpretation is in accord with *Mankin* v. *United States ex rel. Ludowici-Celadon Co.*, 215 U.S. 533, 539 (1910), in which a general contractor was held liable for the debts of the subcontractor to a materialman on the basis of a bond requiring the general contractor to "promptly make payment to all persons supplying . . . materials in the prosecution of the work contemplated." The Court interpreted the bond in light of the federal statute pursuant to which it was obtained and rejected the contention that the bond should run to the benefit of only those suppliers who deal directly with the general contractor, noting that the purpose of the bond was to facilitate the supply of goods and labor necessary to the prompt completion of the construction by providing those supplying goods and labor with security in advance. *Id.* at 537–38. See also, *Moyer* v. *United States ex rel. Trane Co.*, 206 F.2d 57, 60 (4th Cir. 1953). This reasoning is readily applicable to the instant case, where Bennington College required that Granger be bonded in order to ensure the orderly fulfillment of its contractual obligations.

Moreover, this Court has interpreted bond language identical to that quoted from the *Mankin* case in light of federal and common law, in an action by a materialman against a general contractor. With respect to this language, this Court stated that "[i]t was not necessary that persons should have been *named* in the bond; it was sufficient that *any* person subsequently furnished the contractors labor or materials to entitle him to the benefit of the covenant." *United States ex rel. Stanstead Granite Quarries Co.* v. *United States Fidelity & Guaranty Co.*, 78 Vt. 445, 452, 63 A. 581, 583 (1906). While this case dealt with the question of liability to a direct supplier of the general contractor, the reasoning quoted is equally applicable to liability to a remote supplier and consistent with the reasoning in *Mankin, supra.* The remote materialman has an enforceable right, where, as here, the surety

promises, either by express words or by reasonable implication, to pay him. *Central Surety & Insurance Corp.* v. *American Employers' Insurance Co.,* 150 Colo. 6, 9, 370 P.2d 455, 457 (1962).

The appellant contends that Westinghouse failed to show that the bond was ever delivered to and accepted by Bennington College, and therefore, that the court below erred in admitting the bond into evidence. The appellee maintains that the terms of the instruments and circumstantial evidence below make out a prima facie case for delivery and acceptance of the bond by Bennington College.

Delivery is essential to the validity of a bond. *In re Moffitt Estate,* 116 Vt. 286, 289, 75 A.2d 698, 699 (1950). However, formal delivery need not be proved by direct evidence, but it may be inferred from the acts of the parties. *Udick* v. *United States Fidelity & Guaranty Co.,* 37 Idaho 181, 186, 215 P. 838, 840 (1923). See also *St. Louis Brewing Ass'n* v. *Hayes,* 97 F. 859, 862 (5th Cir. 1899). Moreover, where a bond and contract are executed at the same time between the same parties as obligee and principal obligor relative to the same subject matter, they are taken in connection as forming several parts of one agreement. *Central Surety & Insurance Corp.* v. *American Employers' Insurance Co., supra,* 150 Colo. at 9–10, 370 P.2d at 457. See also *Peerless Casualty Co.* v. *Housing Authority,* 228 F.2d 376, 381 (5th Cir. 1955). By an agreed statement of facts, Travelers admits it joined with Granger in executing "a Payment bond relative to the [Bennington College] project on April 5, 1973." The bond and Granger's contract with Bennington College are both dated April 5, 1973. Moreover, the bond recites that the contract was executed the same day, and attached and made part of the bond. The contract was executed by the president of Bennington College. A Granger official admitted purchase of the bond and stated that it was the usual business practice of the construction company to deliver the bond no later than during the early stages of the contract period. There was no controverting evidence on the question of delivery. Construing the bond and contract as a part of one agreement under all the circumstances, we cannot say, as a matter of law, that the trial court abused its discretion in

finding sufficient evidence from which to infer delivery of the bond.

Moreover, "[t]he delivery of the bond depends upon the intent of the principal or obligor to perfect the instrument and to make it at once the absolute property of the obligee." *San Angelo Tank Car Line, Ltd.* v. *Lawyers Surety Corp.*, 407 S.W.2d 23, 24 (Tex. Civ. App. 1966). It is uncontroverted that Granger's project superintendent for the Bennington College job "expected" delivery of the bond to take place. The jury below could have inferred Granger's intent to deliver and hence also delivery itself under all the circumstances of this case.

This conclusion is not changed by language in *In re Moffitt Estate, supra,* 116 Vt. at 289–90, 75 A.2d at 700, to the effect that similar dates on a bond and application for appeal were "of no particular significance." In that case the date of the bond was "immaterial" to the issues before the Court, and, inasmuch as the bond was given in connection with two applications and the terms of the bond did not tie it to one any more than to the other, no inference of relationship could be drawn between the bond date and the application. *Id.* In the present case, however, the terms of the bond clearly link it to the contract, as do other attending circumstances.

The appellant contends on the basis of *Moffitt* that there was no proof of acceptance of the bond by Bennington College, but suggests that "Westinghouse could have proved acceptance with circumstantial evidence, including proof that Bennington retained the bond in its possession." See *John McShain, Inc.* v. *Eagle Indemnity Co.,* 180 Md. 202, 206, 23 A.2d 669, 670 (1942). However, inasmuch as the trial court found sufficient evidence to infer delivery to Bennington, we cannot say that the court below erred in inferring acceptance from circumstantial evidence of delivery in the absence of any evidence of rejection by Bennington College.

The rule in *John McShain* is that "[i]f a bond is delivered to the obligee, and he retains it, there is an implied acceptance. . . . [S]uch acceptance will be presumed from the retention of the bond, even where that retention is for the purpose of later approval, and no approval is later given." *Id.* This Court adopts that rule, as one in keeping with modern

business practice and expectations. In the present case, there was uncontroverted testimony that Granger anticipated delivery and acceptance of the bond as a matter of course, without further action by the obligee, Bennington. Had the parties required a more formal acceptance they could have so agreed. See *Mankin* v. *United States ex rel. Ludowici-Celadon Co., supra,* 215 U.S. at 540. A showing of delivery under the circumstances of this case brings with it the implication of acceptance. To require more, in the absence of controverted testimony, would impose upon the parties a condition which none of them acting in good faith appear to have anticipated at the time of their transactions. See *Berry* v. *United States Fidelity & Guaranty Co.,* 249 Md. 150, 156–58, 238 A.2d 907, 910–12 (1968).

It cannot be said that the trial court below erred in admitting the bond into evidence against Travelers. There was sufficient evidence from which the jury could infer delivery to and acceptance of the bond by Bennington College, the obligee.

The copy of the "WAIVER OF LIEN" form produced by Westinghouse from its files recites that as of June 30, 1974, Allen's debt to Westinghouse was $36,083.53 for all materials previously supplied. It is signed by a sales agent for Westinghouse, who, as a matter of practice upon request of a debtor, would send such waiver forms with the checks received to the credit department where a determination of the debtor's outstanding balance is made. If the checks are honored and the debtor's balance accurately reflected on the forms, then the waiver forms would be sent to the debtor by the credit department. Otherwise, the forms are destroyed. In this case, one of the checks forwarded by the agent was dishonored by the drawee. On the basis of this evidence, the appellant contends that under the rule in *Stannard* v. *Smith,* 40 Vt. 513, 520 (1868), this form should have been allowed into evidence as an admission by a party opponent, even though it may not have been a valid waiver.

The *Stannard* case states that a document which may not meet all the criteria necessary to qualify it for admission as the instrument which it purports to be may be admitted into evidence as an admission of a party. However, in order for the document to be introduced as an admission "the force of

[it must] be determined by proof of the circumstances under which it was made." *Id.*

The circumstances which must be adduced in this case are the nature and extent of the sales agent's authority to act for Westinghouse in the transactions reflected by the statements contained in the waiver form, or the extent to which the agent's statements may have been ratified by Westinghouse. For this Court to find error below, it must appear from the evidence drawn to its attention that the trial court abused its discretion in determining that there was insufficient evidence on the authority of the sales agent to engage in the transactions reflected by the waiver language and that the jury charge by which the court conditioned admissibility of the waiver as an admission on proof of delivery was not adequate under the circumstances with respect to the issue of ratification.

 If the authority of the sales agent who executed the waiver form extended to the transaction reflected by the statements on the form, the form should have been admitted as an admission by Westinghouse without proof of its delivery. This Court has stated that "[i]t is only when an agent is acting within the scope of his authority and his admission relates to an act or negotiation connected therewith that it is admissible against his principal." *Jones* v. *Gay's Express, Inc.,* 110 Vt. 531, 534, 9 A.2d 121, 123 (1939). See also, *Fournier* v. *Burby,* 121 Vt. 88, 90, 148 A.2d 362, 364 (1959). The question of authority in an agent to make statements admissible against the principal as its admissions is twofold. It must appear from the evidence that the statement was made while the agent was acting within the scope of his authority and that the statement made concerns a matter over which the principal has actually or apparently granted the agent authority. The burden of proving agency lies with the party asserting it, Travelers. *Kinsley* v. *Willis,* 120 Vt. 103, 110, 132 A.2d 163, 167 (1957). If this burden is not met, the exclusion of the instrument below will not be found error absent evidence of ratification.

 From the evidence before this Court, it is apparent that the sales agent had authority to collect checks from Westinghouse's debtors in the course of his salesmanship

and fill in the waiver forms with the amount of the checks. It was not shown, however, that the sales agent had any authority to manage or settle accounts with Westinghouse's debtors. Such authority is necessary in order for the agent's statements about the status of Allen's account to be used as an admission against Westinghouse. There is no evidence that Westinghouse expressly or impliedly informed the sales agent that he had authority to settle accounts. Nor is there evidence sufficient to establish apparent authority. To the contrary, Allen was placed on notice of the agent's limited authority by the fact that, when requested by the debtor, the agent executed the waiver form and then sent it, not to the debtor, but to the company's credit department, and the fact that the credit department personnel, not the sales agent, met with Allen to arrange payment schedules. On the basis of this evidence, this Court cannot say that there was sufficient evidence to send the issue of the agent's authority to the jury. Moreover, since Allen may have known of the agent's limited authority, the court below could have concluded on the evidence that the limitation was binding on Allen and those claiming through Allen. See *Blitz* v. *Breen*, 132 Vt. 455, 459, 321 A.2d 48, 50 (1974).

 Inasmuch as the issue of the sales agent's authority was not sufficiently proven to send it to the jury, the question which might properly have been put to the jury was that of ratification. In order for there to be ratification of the unauthorized act of an agent by the principal, it is necessary that it appear from the evidence that the person ratifying have knowledge of the material facts and the act that he is supposedly adopting as his own. *Templeton Construction Corp.* v. *Kelly*, 130 Vt. 420, 425, 296 A.2d 242, 245 (1972); *White* v. *Hight*, 112 Vt. 420, 425, 26 A.2d 86, 89 (1942).

 The evidence reveals that the credit department did receive checks in amounts equal to that on the waiver form. But there was no evidence that the credit department received the original of the waiver form. In fact, the only evidence to which Travelers directs this Court's attention which remotely tends to show that the credit department knew of the statements or the waiver form is that Westinghouse produced the copy of the form from its files. There-

fore, while Westinghouse's credit department may have known of the material facts concerning the Allen account, it cannot be said on the evidence that the department knew of the statement of account in the waiver form at any time prior to institution of this action. Absent evidence of such knowledge there was no jury question on whether Westinghouse could be said to have ratified the statements of the sales agent made on the waiver form.

Thus, Travelers failed to introduce sufficient evidence on the sales agent's authority or on the elements of ratification to take the question of the admissibility of the form to the jury. The appellant's citation of *Kimball v. New York Life Insurance Co.*, 94 Vt. 100, 108 A. 921 (1920), does not change this result since that case does not address the issue of authority necessary in this case to establish the admissibility of the waiver form as an admission. The trial court's jury instruction conditioning the admissibility of the waiver as an admission upon delivery may have been error, but we need not reach this issue, since we can find no evidentiary basis upon which the waiver form should have been admitted as an admission.

The appellant urges this Court to find error in the trial court's refusal to grant a directed verdict on the proof of account and the jury charge given with respect to allocation of Allen's payments. Both questions go to the issue of Westinghouse's duty to allocate payments received from Allen to its debts for the Bennington College job.

It is the general rule that a creditor owed several debts may apply payments in any reasonable and equitable manner, including on a first-in, first-out basis. See *Wetmore & Morse Granite Co. v. Ryle*, 93 Vt. 245, 254, 107 A. 109, 113 (1919); *Pierce, Clark & Co. v. Knight*, 31 Vt. 701, 707 (1859). The appellant, however, asserts that there is an exception to this rule. It contends that "[i]f the debtor is under a duty to a third person to devote funds paid by him to the discharge of a particular debt, the payment must be so applied if the creditor knows or has reason to know of that duty." *St. Paul Fire & Marine Insurance Co. v. United States ex rel. Dakota Electric Supply Co.*, 309 F.2d 22, 25 (8th Cir. 1962), *cert. denied*, 372 U.S. 936 (1963).

There is no doubt that a surety deserves every reasonable protection which the good faith of the parties could ensure. See *Pierce, Clark & Co.* v. *Knight, supra,* 31 Vt. at 707–08. For the burden of this rule to fall upon a party who deals with a debtor, there must affirmatively appear facts indicating that the creditor failed to act in good faith. *Hurd* v. *Spencer,* 40 Vt. 581, 586 (1868). The duty to allocate has been recognized in Vermont where facts about the liability of a third party are proven, which "from the nature of the transaction and the terms of the . . . contract, must have been known" to the creditor. *Id.*

The evidence in the instant case reveals that Westinghouse knew that Allen was in financial straits, that Allen was doing work with materials supplied by Westinghouse at a job for which the general contractor was bonded with the appellant, and that Allen had made some payments to Westinghouse during the contract period with Granger. There was no proof drawn to the attention of this Court that Westinghouse actually knew any details of the bonding agreement, including the extent of coverage afforded to suppliers of subcontractors. At issue, therefore, is whether this was sufficient evidence that Westinghouse should have known of the existence of the appellant's liability for Allen's debts to invoke the rule of allocation advanced by the appellant.

It is the position of the appellant that Westinghouse had the burden of proof on proper allocation, but the facts of this case do not necessarily establish the duty to allocate in the first place. As Westinghouse correctly suggests, the burden of proving whether Westinghouse should have known of Travelers' liability falls on the party raising the allocation issue as an avoidance or affirmative defense under V.R.C.P. 8(c). This is so because proof of Westinghouse's knowledge is an essential element of Travelers' defense that the principal, Granger, and the subcontractor, Allen, had made payment on the Bennington College job. See *St. Paul Fire & Marine Insurance Co.* v. *United States ex rel. Dakota Electric Supply Co., supra.* To raise the duty of allocation, it is necessary that the surety plead and prove the elements of the affirmative defense. See *Frigon* v. *Whipple,* 134 Vt. 376, 378, 360 A.2d 69, 70 (1976).

In light of the facts of this case drawn to the attention of the Court, it cannot be said that the trial court erred in refusing to direct a verdict on the basis of Westinghouse's failure to allocate, nor can it be said that the lower court erred in its jury instruction on the allocation of payments. Appellant did not introduce sufficient evidence indicating that Westinghouse knew or should have known of the liability of Travelers to establish a prima facie defense of payment based on a duty of the creditor to allocate payments to Travelers' benefit. Therefore, the court below could, as it did, direct the jury to make an effective allocation of Allen's payments based on principles of fairness and equity. See *Johansson's Admr.* v. *Granite Savings Bank & Trust Co.*, 114 Vt. 336, 346, 44 A.2d 542, 547 (1945).

The final issue presented by this appeal deals with the sufficiency of Westinghouse's proof of Allen's account debt. The appellant contends that the amount due shown by the evidence is speculative and based upon a computer printout improperly admitted into evidence.

 With respect to the speculative nature of Westinghouse's proof of account, it is clear that there was an invoice for each item claimed on the account submitted by Westinghouse, the total amount of which closely corresponds to the amount of the jury verdict. Despite a certain disorderliness in Westinghouse's presentation, it cannot be said that the jury verdict was based on mere conjecture, surmise or suspicion, as Travelers contends. See *Lewis* v. *Vermont Gas Corp.*, 121 Vt. 168, 179, 151 A.2d 297, 304 (1959).

The computer printout on which Westinghouse listed the items of account was prepared six months after its last shipment to Allen and five months after Allen's last payment. Similar computer printouts of compiled data were sent to Allen as monthly statements of account during a portion of the time when they had dealings. While computer stored and compiled data has become commonplace in the business community, this Court has yet to rule on the requirements of its admissibility into evidence under the hearsay rule.

 The appellant challenges the Westinghouse printout as hearsay which does not qualify as an admissible

business record under the Uniform Business Records as Evidence Act, 12 V.S.A. § 1700 (b). This act states:

> A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

In order for a document to be admitted as a business record a qualified witness must testify pursuant to 12 V.S.A. § 1700 (b). *Colonial Plumbing Corp.* v. *Solar Heating, Inc.,* 133 Vt. 82, 83, 329 A.2d 638, 640 (1974). The qualification of the witness and the sufficiency of his testimony are to be determined by the trial court in the exercise of its discretion in light of the sources of information, and the method and time of its preparation. *Id.* Inasmuch as it is the purpose of this statute to provide relief from rigid common law rules on the admissibility of business records, records offered "ought to be received into evidence unless the trial court, after examining the records and the manner of their preparation, entertains serious doubt as to their dependability." *Id.* It is against these standards that the trial court should have determined the admissibility of the Westinghouse printout.

The appellant does not challenge the qualifications of the credit department personnel who testified as to the identity, mode of preparation and sources of information contained in the printout. Rather, the appellant attacks the admission of the printout on the grounds that (1) it was not a record made at or near the time of the events recorded; (2) it was not a record kept in the regular course of business, but a specially prepared document; and (3) it does not accurately reflect information contained in the original invoices.

That the computer data contained in the printout was not prepared at or near the time of Westinghouse's sales to Allen is not supported by the evidence. From the evidence it appears that Westinghouse maintained its account files throughout much of the time it dealt with Allen

in a computer data bank and that its credit department regularly used this file to manage the Allen account. Although the particular printout was made at a time which was arguably after all regular dealings with Allen, it is not thereby incompetent evidence in light of testimony that the computer was used for storage and compilation of the data during the underlying transactions. As the Nebraska court has stated in the seminal case on the admissibility of computer records, "[n]o particular mode or form of record is required" by the Uniform Act. *Transport Indemnity Co.* v. *Seib,* 178 Neb. 253, 259, 132 N.W.2d 871, 875 (1965). If the entries into the computer data bank were made in the regular course of business, the printout should not be excluded because it was made after the underlying events. *Cotton* v. *John W. Eshelman & Sons, Inc.,* 137 Ga. App. 360, 364, 223 S.E.2d 757, 761 (1976). "Such a printout is as much a business record as would be a page from a ledger book bearing the same information." *Smith* v. *Bank of the South,* 141 Ga. App. 114, 115, 232 S.E.2d 629, 630 (1977).

The appellant maintains that the printout was not made in the regular course of business, but prepared by Westinghouse to pursue its legal remedies.

> This argument exalts the form over the substance. The retrieval from the taped record . . . was made for the purposes of the trial. But, the taped record and the information and calculations thereon were made in the usual course of business and for the purpose of the business alone. There is no merit to this contention.

*Transport Indemnity Co.* v. *Seib, supra,* 178 Neb. at 260, 132 N.W.2d at 875.

The fact that the Westinghouse printout of the Allen account from its computer was broken down according to the job for which each item thereon was incurred after it had stopped shipments does not change this result. A summary of computer data may or may not be admissible according to the circumstances of each case. *United States* v. *Russo,* 480 F.2d 1228, 1240 (6th Cir. 1973), *cert. denied,* 414 U.S. 1157 (1974). In *Russo,* the court found appropriate circumstances for admission where the statistical information on medical insurance claims in a printout prepared eleven months

after the statistical period in question was "arranged in a predetermined manner and classified according to medical procedures." *Id.* Westinghouse's breakdown was by job numbers included in the original entry data, except for several items which were excluded from evidence. It would seem, then, that as in *Russo*, the summary reflected the categorization potential of the original entries and that the category selected was rational under the circumstances. While it should be noted that in *Russo* the entire body of computer data was produced along with the summary, the data relevant to that case were statistical, rather than in the nature of an account as in the instant case. There is, therefore, no compelling reason to require that the printout reflect all of Allen's debts, since it would be unlikely that printed invoices covering only the Bennington job would be inadmissible because invoices from other jobs were not also offered.

The appellant urges that the trial court abused its discretion in admitting the printout because the information contained on it did not correspond to that on the invoices. Westinghouse has drawn the attention of this Court to the invoices covering the disputed amounts and to testimony that, as to the items on the account admitted into evidence, the printout statement of account was accurate to the best knowledge of the foundation witness. Even where a foundation witness is unfamiliar with the physical operation of the computerized information storage and computation process, but has a general understanding of the accounting procedures involved and personal familiarity with the account, the printout statement of account should be admitted into evidence unless there are other factors which seriously compromise the trustworthiness of the computer printout. See *Merrick* v. *United States Rubber Co.*, 7 Ariz. App. 433, 435–36, 440 P.2d 314, 316–17 (1968). See also, *Colonial Plumbing Corp.* v. *Solar Heating, Inc., supra.*

While the appellant raises a number of factual questions which attack the accuracy of the printout, including several letters from Westinghouse's counsel concerning the account, this Court cannot say that the trial court abused its discretion in admitting the printout statement into evidence. From the circumstances of this case, there appear sufficient

indicia of trustworthiness concerning the identity of the printout, the sources of information, and the manner and time of preparation for the trial court to have admitted the document under 12 V.S.A. § 1700(b). The other factual issues raised by the appellant go to the weight of the evidence, not to its admissibility.

The judgment below is not in error.

*Affirmed.*