2014 VT 33

# Johnathan Lasek v. Vermont Vapor, Inc. and Downing Properties, LLC

[95 A.3d 447]

No. 13-143

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed April 11, 2014

*Kaveh S. Shahi* of *Cleary, Shahi & Aicher, P.C.*, Rutland, for Plaintiff-Appellant.

*Andrew B. Delaney* of *Martin & Associates, P.C.*, Barre, for Defendant-Appellee Vermont Vapor, Inc.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee Downing Properties, LLC.

¶ 1. **Crawford, J.** Plaintiff appeals the trial court's grant of judgment as a matter of law to defendants following a three-day jury trial in this negligence case. Plaintiff claims that the trial court erred in (1) excluding the testimony of plaintiff's expert witness on causation, (2) granting defendants' motion for judgment as a matter of law, (3) excluding an eyewitness's statements to police, (4) denying plaintiff's motion for a new trial, (5) awarding all deposition costs to defendants, and (6) refusing to disqualify counsel for defendant-landlord. We affirm the trial court's decision in all respects, with the exception of the award of deposition costs.

¶ 2. This case arose following a fire that destroyed a commercial building in Rutland, Vermont in April 2010. The following facts were introduced through plaintiff's witnesses at trial. Plaintiff Johnathan Lasek leased the northern half of the building and used the space as a workshop for his house-staining business. He stored staining products and other equipment and constructed a business office in the northeastern corner of the building. The southwestern corner of the building contained a fully enclosed room that was occupied by another commercial tenant, Vermont Vapor Inc. (VVI). The remainder of the building was used by landlord Downing Properties, LLC, as storage for ATVs, motorcycles, and snowmobiles.

¶ 3. VVI used its space as a laboratory for mixing the liquid filler for electronic cigarettes. The process involved diluting liquid nicotine with glycerin and other ingredients. VVI is owned by Adam Tredwell. Adam hired his father, Warren Tredwell, to alter the room to Adam's specifications. Warren added sheetrock and other materials to create a "clean room." He also installed an eight-inch fan on the south wall of the laboratory that vented to the outside of the building. An industrial space heater was suspended from the rafters of the warehouse, above the ceiling of the laboratory. The Tredwells connected the heater to a propane tank so that they could heat the space in the winter months. Warren was the last person in the laboratory the night before the fire.

¶ 4. The fire was reported at around 5:00 a.m. on April 7, 2010. When firefighters arrived a few minutes later, the northwest corner of the building — plaintiff's corner — had a large hole in the roof and was heavily engulfed in flames. VVI's corner was not on fire at that time.

¶ 5. Plaintiff sued VVI for negligence and strict liability, alleging that VVI had caused the fire by mishandling liquid nicotine. He also sued landlord for breach of the implied warranty of suitability for commercial use, negligence, breach of the duty to warn, and unjust enrichment. After plaintiff's presentation of his case, the trial court granted defendants' motion for judgment as a matter of law. This appeal followed.

## I. Exclusion of Expert Testimony on Causation

¶ 6. Prior to trial, defendants filed a joint motion to exclude the testimony of plaintiff's fire investigator about the cause of the fire. The court did not rule on the motion at that time. Instead, it conducted a mid-trial hearing on admissibility after defendants renewed their objection.[1] The court ultimately ruled that the fire investigator could not offer his opinion regarding the cause of the fire because his opinion did not meet the standards of Vermont Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff argues that this ruling was error.

¶ 7. Under Rule 702, a qualified expert witness may testify if his or her testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue" and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." V.R.E. 702. Vermont Rule 702 is derived from Federal Rule 702, and the two provisions are substantively identical.

¶ 8. ■ In *Daubert*, the U.S. Supreme Court held that Federal Rule 702 superseded the traditional test for admissibility of expert testimony set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). 509 U.S. at 586, 592-93. The *Daubert* decision created "a flexible standard requiring only that expert testimony be both relevant and reliable to be admissible." *985 Assocs., Ltd. v. Daewoo Elecs. Am., Inc.*, 2008 VT 14, ¶ 6, 183 Vt. 208, 945 A.2d 381 (citing *Daubert*, 509 U.S. at 588-89). Because our rules of evidence are "essentially identical" to the federal rules, we have

---

[1] Plaintiff's fire investigator was permitted to testify regarding his investigation of the fire's source, and to offer his opinion that the fire originated in the southwest corner of the building, near the space heater. Defendants renewed their objection when he began to testify regarding causation.

adopted the standards set forth in *Daubert* and its progeny governing admissibility of expert testimony. *Id.* (quotation omitted).

¶ 9. ■ "[W]e review trial court decisions on the admissibility of expert testimony only for abuse of discretion." *Id.* ¶ 9. However, we must "engage in a substantial and thorough analysis of the trial court's decision and order to ensure that the trial judge's decision was in accordance with *Daubert* and our applicable precedents." *USGen New Eng., Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 24, 177 Vt. 193, 862 A.2d 269 (quotation omitted).

¶ 10. The proffered opinion of plaintiff's fire investigator was that vapors from liquid nicotine in the lab came into contact with the pilot light of the overhead industrial space heater, causing a flash fire. During the *Daubert* hearing, he admitted that he was not a chemical engineer and did not know how much of any chemical was present in the VVI lab the night of the fire. He further admitted that he did not know the volume of air circulating through the lab because he did not know the size of the vent or the filter fabric that was used. When asked what methodology he used to determine how chemical vapors got out of the lab and reached the space heater overhead, he responded:

> There may have been penetrations in that ceiling. With having a supposed vent in the door you're saying that you mixed the chemicals within the room, we know that. The chemicals may or may not have been being drawn out by an exhaust fan. We know that the fumes and the vapor given off from these chemicals will fill the room, come out and rise.

The court asked, "How do we know that?" The fire investigator responded that "if you look at the [material safety data] sheets . . . some of those chemicals that were . . . used in this process were lighter than air." Landlord's attorney then asked how the fire investigator had calculated that the concentration of these chemicals in the air was high enough to be ignited by the pilot light from the space heater. Plaintiff's fire investigator responded that he was not an engineer, but that this was the "commonsense" approach for this type of investigation. He opined that if there were containers without lids that contained solutions of the chemicals used by VVI in the lab, the lab likely would have been saturated with fumes, and the fumes would have escaped

through a hole in the ceiling or through the door, and made their way up to the space heater where they ignited. On cross-examination, he agreed that nicotine is much heavier than air and that its vapors would have gone down, not up. He thought that mixing the nicotine with other chemicals, perhaps alcohol, created a flammable vapor that reached the pilot light:

> [M]y thoughts and the process through this is, [with] this being mixed with other chemicals — all the proper-ties . . . go out the window because we don't know what type of chemical this is now because we've mixed alcohol, we've mixed a couple other different chemicals with it. And they all have properties that will burn. . . . No, I don't know how else to explain it to you. I'm not a chemical engineer to break that all down.

¶ 11. The court excluded plaintiff's fire investigator's testimony pertaining to causation. The court explained that the fire investigator was not trained in chemistry, and did not know what chemicals were present, what their flammability or other characteristics were, or how they would interact with each other or flow through the air. The court noted that nicotine was present, but nicotine has a low flammability rating and is heavier than air. Even accepting that nicotine's properties could have been modified by a combination of other chemicals, there was no evidence of what the other chemicals were or how they would behave. The court concluded that the fire investigator could not offer his opinion regarding the cause of the fire because it did not meet the standards of *Daubert* and Rule 702.

¶ 12. ■ ■ "Proposed testimony must be supported by appropriate validation — *i. e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. The trial court properly excluded the fire investigator's testimony because it was based on speculation. Although the evidence showed that VVI used nicotine and other chemicals in the course of its business, there was no evidence that these chemicals were present in the lab in a quantity sufficient to ignite a flame at a space heater above and outside of the room on the night of the fire. Furthermore, the fire investigator was unable to offer a reliable explanation of how any nicotine vapors that were present would be able to travel up to the space heater because, as he conceded, nicotine vapors are heavier than air and would therefore tend to sink rather than rise. He opined that the

combination of various chemicals might cause the vapors to rise, but admitted that he did not have a chemical engineering background and could not explain what mixture of chemicals might cause that to happen or whether it was likely to have occurred in this case. We agree with the trial court that the fire investigator's opinion about causation was not "based upon sufficient facts or data," and was therefore unreliable. V.R.E. 702.

¶ 13. Plaintiff argues that in his motion for a new trial he provided the court with data showing that the density of liquid nicotine equals that of air at sixty-eight degrees Fahrenheit, so it was not "junk science" to conclude that vapor from liquid nicotine could reach the space heater. The fact remains, however, that plaintiff's fire investigator was unqualified to explain this information to the jury. He was also unable to say what amount of liquid nicotine had to be present in the open in order for the vapors to escape the lab in a sufficient concentration to ignite, or whether that concentration of vapors was present on the night of the fire. The trial court therefore did not abuse its discretion in excluding his testimony.

## II. Rule 50 Motion

¶ 14. After plaintiff rested his case, the trial court granted judgment as a matter of law to defendants on all of plaintiff's claims pursuant to Vermont Rule of Civil Procedure 50. Rule 50(a)(1) permits the court to grant judgment as a matter of law against a party that has been fully heard on an issue where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." In evaluating the trial court's grant of judgment as a matter of law to defendants, we "consider the evidence in the light most favorable to the nonmoving party, excluding the effect of modifying evidence." *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 10, 195 Vt. 524, 90 A.3d 885 (quotation omitted). "If evidence exists that may fairly and reasonably support all elements of the nonmoving party's claim, judgment as a matter of law is improper." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122, 730 A.2d 1086, 1090 (1999).

### A. Negligence Claims Against VVI and Landlord

¶ 15. ▇ The trial court properly granted judgment as a matter of law in favor of defendants on plaintiff's claims of negligence against VVI and landlord. Without expert testimony on the issue

of causation, plaintiff was unable to prove that VVI's use of liquid nicotine in its laboratory caused the fire. Without establishing that VVI caused the fire, plaintiff also could not prove that landlord was negligent in leasing the space to VVI or in maintaining VVI's leased space.

¶ 16. ▮ Plaintiff argues, however, that the trial court should have allowed the negligence claims to be decided by the jury because the doctrine of res ipsa loquitur applied to his case. The doctrine "allows the plaintiff to escape a directed verdict without directly establishing negligence, and . . . allows the jury a permissive inference of negligence." *Cyr v. Green Mountain Power Corp.*, 145 Vt. 231, 235, 485 A.2d 1265, 1268 (1984). For the doctrine to apply, a plaintiff must demonstrate the following elements:

> 1. A legal duty owing from the defendant to exercise a certain degree of care in connection with a particular instrumentality to prevent the very occurrence that has happened.

> 2. The subject instrumentality at the time of the occurrence must have been under the defendant's control and management in such a way that there can be no serious question concerning the defendant's responsibility for the misadventure of the instrument.

> 3. The instrument for which the defendant was responsible must be the producing cause of the plaintiff's injury.

> 4. The event which brought on the plaintiff's harm is such that would not ordinarily occur except for the want of requisite care on the part of the defendant as the person responsible for the injuring agency.

*Id.* at 235-36, 485 A.2d at 1268.

¶ 17. ▮ The doctrine of res ipsa loquitur allows an inference of *negligence* in certain cases, not causation. Established causation is a prerequisite to the application of the doctrine. As discussed above, plaintiff's expert was unable to present reliable testimony linking VVI's activities in the lab to the fire. Furthermore, plaintiff failed to show that a fire in a commercial warehouse is the sort of accident that ordinarily does not occur without negligence. See *Metro. Prop. & Cas. v. Harper*, 7 P.3d 541, 551 (Or. Ct. App. 2000)

("*[R]es ipsa loquitur* is not commonly applied to fires, because the cause of a fire is generally unknown [and] fires commonly occur where due care has been exercised as well as where due care was wanting." (quotation omitted)). The cause and origin of this fire were genuinely disputed. It was therefore appropriate for the court to decline to apply res ipsa loquitur in this case.

## B. Unjust Enrichment Claim Against Landlord

¶ 18. Plaintiff also argues that the trial court erred in granting judgment as a matter of law to landlord on plaintiff's claim of unjust enrichment. "Under the doctrine of unjust enrichment, a party who receives a benefit must return the benefit if retention would be inequitable. Unjust enrichment applies if in light of the totality of the circumstances, equity and good conscience demand that the benefitted party return that which was given." *Kellogg v. Shushereba*, 2013 VT 76, ¶ 22, 194 Vt. 446, 82 A.3d 1121 (quotations and alteration omitted). Plaintiff claims that he spent over $40,000 improving his portion of the warehouse. Because landlord's insurance proceeds covered the total loss of the building, he seeks some share of the payment. Assuming without deciding that Vermont law recognizes an unjust enrichment claim by a tenant against a landlord to recover the value of improvements made by the tenant, plaintiff's claim fails because he did not show that landlord received a benefit from his improvements.[2] There was no evidence that the improvements resulted in a higher insurance settlement for landlord or increased the value of the warehouse. The trial court accordingly did not err in dismissing plaintiff's unjust enrichment claim.

---

[2] In the absence of an agreement to the contrary, a tenant is generally not entitled to compensation by the landlord for improvements made to the leased premises. *Commercial Trust & Sav. Bank v. Christensen*, 535 N.W.2d 853, 858 (S.D. 1995). Courts in several states have recognized an equitable exception permitting a tenant to recover under an unjust-enrichment theory where there is a breach of the lease or other inequitable conduct by the landlord. See, e.g., *Hertz v. Fiscus*, 567 P.2d 1, 2 (Idaho 1977); *Christensen*, 535 N.W.2d at 858. Vermont so far has not recognized this exception. Even if we were to adopt such a doctrine, however, plaintiff's claim would still fail because there is no evidence of inequitable conduct by landlord. See *In re Estate of Vangen*, 370 N.W.2d 479, 480 (Minn. Ct. App. 1985) (holding that tenant failed to state a claim for unjust enrichment for value of improvements he made to landlord's property where landlord "had done nothing illegal or inequitable").

## C. Remaining Claims

¶ 19. ▋ The trial court granted judgment as a matter of law on plaintiff's strict liability claim against VVI on the grounds that there was no ultrahazardous activity being conducted. It dismissed plaintiff's breach-of-warranty-of-suitability claim against landlord on the ground that no such action has been recognized in Vermont. Finally, it dismissed plaintiff's duty-to-warn claim against landlord on the ground that landlord did not owe a duty to warn plaintiff about VVI's activities. Plaintiff's brief does not challenge the court's rulings on these counts, and we will not disturb them. See *Catlin v. Town of Hartland*, 138 Vt. 1, 2, 409 A.2d 596, 597 (1979) (declining to disturb trial court's ruling where appellant failed to challenge it in appellate brief).

### III. Exclusion of Warren Tredwell's Statements to Police

¶ 20. Plaintiff argues that the trial court erred in excluding two statements that Warren Tredwell made to police the morning of the fire and a few days later. He argues that the statements were admissible nonhearsay evidence pursuant to Vermont Rule of Evidence 801(d)(2)(D). That rule provides that a statement offered against a party is not hearsay if it is "a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." V.R.E. 801(d)(2)(D).

¶ 21. The first statement was contained in the report written by a state police investigator who interviewed Warren the morning of the fire:

> [Warren] stated there was a five gallon pail of glycerin and approximately 800 bottles of pre-made electronic cigarette material inside the shop. He advised each bottle of the product contained approximately 70% glycerin, and the rest was propylene glycol, distilled water and a "small dosage of nicotine." He further advised the refrigerator in the shop held containers of 99.9% nicotine. [Warren] advised his son was the only one who handled the nicotine and diluted it down to what they called a "base liquid," before he himself entered the process of bottling, labeling and capping the product for sale.

The second statement was contained in the report written by the investigator hired by landlord's insurer. Warren told the investi-

gator that he was the last person in the warehouse the night of the fire, that he left at 2:00 a.m. "after completing an order of electronic cigarettes to be shipped out the next day," and that he worked for his son.

¶ 22. The court agreed with plaintiff that Warren was an agent of VVI, but excluded the statements because plaintiff had not established that they were made within the scope of Warren's agency or employment. The court allowed plaintiff to use the statements for purposes of impeachment, which he ultimately did not do.

¶ 23. The trial court based its ruling on this Court's decision in *Westinghouse Electric Supply Co. v. B.L. Allen, Inc.*, 138 Vt. 84, 94, 413 A.2d 122, 129 (1980), in which we stated that it is "'only when an agent is acting within the scope of his authority and his admission relates to an act or negotiation connected therewith that it is admissible against his principal.'" *Id.* (quoting *Jones v. Gay's Express, Inc.*, 110 Vt. 531, 534, 9 A.2d 121, 123 (1939)). The rule stated in *Westinghouse* has since been modified by Rule 801(d)(2)(D). See Reporter's Notes, V.R.E. 801(d)(2)(D) (explaining that in contrast to "traditional view" expressed in *Westinghouse* and other cases, "[t]he present rule adopts the broader view allowing statements about matters within the scope of employment in order to prevent loss of valuable evidence"); see also *Contractor's Crane Serv., Inc. v. Vt. Whey Abatement Auth.*, 147 Vt. 441, 451, 519 A.2d 1166, 1173 (1986) (explaining that "[s]tatements made by an [agent] concerning a matter within his employment may be admissible against the party retaining the [agent]" (quotation omitted)). It was therefore error to require plaintiff to show that Adam Tredwell authorized Warren Tredwell to make his statements to the police and the investigator. Under Rule 801(d)(2)(D) and our case law, an agent's statements are not hearsay if they concern a matter within the scope of the agent's agency or employment. *Contractor's Crane Serv.*, 147 Vt. at 451, 519 A.2d at 1173. Warren's employment in the lab provided a sufficient foundation for the admission of his statement.

¶ 24. However, the court's error was harmless because plaintiff has not shown that admission of the testimony would have

changed the outcome of the case.[3] V.R.C.P. 61. The statements did contradict Warren's testimony that he never took part in bottling and capping the e-cigarette material. Nonetheless, even if he had been handling the pre-mixed material on the night of the fire, there was no showing that the vapors from that material were flammable or present in sufficient concentrations to escape the lab and come into contact with the pilot light. Warren's statements would not have solved the problem of establishing causation. Thus, their exclusion did not affect the outcome of this case.

## IV. Motion to Alter Judgment and for a New Trial

¶ 25. Plaintiff argues that the court should have granted his motion for a new trial because its dismissal of the case was based on incorrect scientific reasoning.[4] He argues that his motion for a new trial provided the court with evidence that "density depended on temperature, and that indeed liquid nicotine was lighter than air at temperatures above 68 degrees." According to plaintiff, this evidence demonstrated that at a temperature of seventy degrees liquid nicotine would evaporate and the vapors would rise and reach the pilot light of the heater. We review the trial court's denial of a motion for a new trial for abuse of discretion. *Gregory v. Poulin Auto Sales, Inc.*, 2012 VT 28, ¶ 17, 191 Vt. 611, 44 A.3d 788 (mem.).

¶ 26. ■■ ■■ The trial court acted within its discretion in denying plaintiff's motion for a new trial. The court's decision to grant judgment as a matter of law in favor of defendants was not based on its own scientific conclusions. Rather, it was based on plaintiff's failure to provide reliable evidence at trial to prove that VVI's activities caused the fire. The information plaintiff offered in his motion was available to him prior to the judgment and could have been offered through a qualified expert witness at trial. His failure to provide admissible evidence in support of causation led to the Rule 50 motion being granted. Plaintiff has failed to demonstrate that the court's denial of his motion for a new trial

---

[3] Plaintiff actually managed to get the first statement into evidence anyway through the testimony of the police officer who took the statement.

[4] Although plaintiff moved to "alter" the judgment in this case under Vermont Rule of Civil Procedure 59(e), the relief he sought was a new trial and we therefore review the denial of the motion under the standard applicable to Rule 59(a) motions.

was an abuse of discretion. See *Gardner v. Town of Ludlow*, 135 Vt. 87, 91, 369 A.2d 1382, 1385 (1977) (explaining that Rule 59 is directed at preventing a "miscarriage of justice" and is not a device for putting "merely dilatory" evidence before the court).

## V. Deposition Costs

¶ 27. Vermont Rule of Civil Procedure 54(g) allows the court to award "costs in the taking of depositions" to the prevailing party in its discretion. The depositions must have been "reasonably necessary," whether or not they were actually used at trial. V.R.C.P. 54(g). The rule provides that deposition-related costs "may include the cost of service of subpoena upon the deponent, the reasonable fee of the officer before whom the deposition is taken, the stenographer's reasonable fee for attendance, and the cost of the original transcript of the testimony or such part thereof as the court may fix." *Id.*

¶ 28. ▆▆▆ Plaintiff argues that the trial court improperly awarded defendants the costs of obtaining copies of transcripts of depositions that they did not take themselves.[5] We disagree. The trial court has broad discretion to award the prevailing party the costs of obtaining copies of the transcripts provided that the depositions were "reasonably necessary" to prepare for the litigation. V.R.C.P. 54(g); *Peterson v. Chichester*, 157 Vt. 548, 553, 600 A.2d 1326, 1329 (1991) ("The trial court has discretion in awarding costs."); see also *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 686 (E.D. Tex. 2007) (stating that trial court has "great discretion to tax the costs of taking, transcribing, and reproducing depositions"). All of the depositions for which defendants requested costs — with the exception of that of

---

[5] VVI requested the costs of electronic copies of depositions of Johnathan Lasek, Adam and Warren Tredwell, and Jan and Hartford Downing. It also requested half the costs of obtaining the original and a copy of the transcript of the deposition of plaintiff's fire investigator William May, as well as the cost of videorecording Mr. May's deposition.

Landlord requested the costs of original and electronic copies of the depositions of Mr. Lasek, the Tredwells, and the Downings, as well as Ray Weed (plaintiff's expert on damages), James Cruise and Timothy Austin (defendants' fire expert), as well as half the costs of obtaining the original and a copy of the transcript of the deposition of Mr. May, and half the cost of the videorecording Mr. May's deposition. Landlord also requested the costs of videorecording the depositions of Mr. Lasek, Mr. Austin, and Mr. Cruise.

Lieutenant James Cruise, which is addressed below — were of witnesses who testified at trial or were essential to the case. While plaintiff correctly points out that the rule mentions only "the cost of the original transcript," the list of costs is nonexclusive and the trial court may, in its discretion, award other deposition-related costs if it sees fit. V.R.C.P. 54(g).

¶ 29. ■ ■ The court abused its discretion, however, in ordering plaintiff to pay defendants for the cost of concurrently videorecording the depositions. Rule 30(b)(4)(B) provides that "[a]ny party or witness may *at his or her own expense* concurrently record a deposition by a method other than that being used by the party taking the deposition."[6] (Emphasis added.) Although this provision applies to parties who are not conducting the deposition, the principle also applies to parties who opt to preserve the testimony by more than one means. Defendants recorded their depositions stenographically and had already recovered the costs of those transcripts. They were not entitled to be reimbursed for the additional costs they incurred in videorecording the same depositions. We remand this portion of the case for the trial court to adjust its award of costs.

¶ 30. ■ Plaintiff argues that he should not have to pay for the costs of the deposition of Lieutenant Cruise, who did not testify at trial. The trial court did not address whether Lieutenant Cruise's deposition was "reasonably necessary." V.R.C.P. 54(g). We accordingly remand so that the trial court may make that determination in the first instance.

¶ 31. ■ ■ Contrary to plaintiff's claim, landlord's insurer is not precluded from recovering its deposition-related costs because it defended the suit instead of landlord. "Ordinarily, an insurer who defends and indemnifies on behalf of its insured will be subrogated to the rights of its insured." *Jefferson Ins. Co. v. Travelers Ins. Co.*, 159 Vt. 46, 49, 614 A.2d 385, 387 (1992). As a

---

[6] By contrast, Federal Rule 30 permits any party to designate another method of recording, and states that "[t]hat party bears the expense of the additional record or transcript unless the court orders otherwise." F.R.C.P. 30(b)(3)(B); see also 28 U.S.C. § 1920(2) (allowing federal judge to tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case"). Unlike the federal rule, Vermont Rule 30 contains no authorization for a court to award the prevailing party the costs it incurred in making its own recording of a deposition by another method.

prevailing party in this common-law action, landlord's insurer — acting on landlord's behalf — was entitled to recover litigation costs related to the defense, including deposition costs. V.R.C.P. 54; *Murphy v. Sentry Ins.*, 2014 VT 25, ¶ 53, 196 Vt. 92, 95 A.3d 985.

## VI. Motion to Disqualify Landlord's Attorney

¶ 32. Prior to the commencement of this suit, in October 2010, plaintiff placed a lien on the property involved in the fire that was owned by landlord. Plaintiff's attorney Kaveh Shahi advised the court in December 2011 that plaintiff was withdrawing the lien. In May 2012, landlord's attorney Harry Ryan wrote a letter to Attorney Shahi stating that his client "went into some sort of shock and required medical attention" after discovering that plaintiff's lien was still in the land records. The letter stated "[y]ou are now on notice that [landlord] may suffer additional significant personal injury if you do not take appropriate action to make sure that the lien is removed," and requested that plaintiff's attorney write to the town clerk's office and ask them to remove the lien.

¶ 33. Following receipt of the letter, plaintiff sought to disqualify Attorney Ryan and his firm, Ryan Smith & Carbine, Ltd. (RSC), from defending landlord in this case. At the time that Attorney Ryan wrote the letter to Attorney Shahi, RSC was retained as counsel by the malpractice insurer for Attorney Shahi's firm, Cleary Shahi & Aicher, P.C. (CSA) to defend a separate suit against Attorney Shahi's partners.[7] Plaintiff argued that Attorney Ryan's letter was a threat to bring suit against Attorney Shahi. He argued that RSC therefore had a concurrent conflict of interest because it was asserting a claim against Attorney Shahi while simultaneously defending his firm against another malpractice action.

¶ 34. Following a hearing, the trial court denied plaintiff's motion for disqualification. We review the trial court's ruling for abuse of discretion. See *Stowell v. Bennett*, 169 Vt. 630, 631, 739 A.2d 1210, 1211 (1999) (mem.) ("A motion to disqualify counsel is a matter that rests within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion.").

---

[7] RSC subsequently withdrew from representing CSA in the malpractice case with that court's permission.

¶ 35. ▮ ▮ We affirm the trial court's decision for two reasons. First, plaintiff has not produced a transcript of the hearing below, which would allow us to determine whether the trial court had an appropriate factual basis for making its ruling. See *Cody v. Cody*, 2005 VT 116, ¶ 16, 179 Vt. 90, 889 A.2d 733 (holding that evidentiary hearing was necessary to resolve motion to disqualify attorney where material facts were in dispute).

¶ 36. ▮ Second, plaintiff has failed to show that disqualification was warranted. Rule 1.7 of the Vermont Rules of Professional Conduct prohibits an attorney from representing a client:

> if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

V.R.Pr.C. 1.7(a). RSC's representation of landlord was not directly adverse to CSA. Representation is directly adverse where a lawyer "act[s] as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." V.R.Pr.C. 1.7 cmt. 6. RSC was not acting as an advocate against Attorney Shahi or his firm, but rather against one of Attorney Shahi's clients. Attorney Ryan's letter cannot reasonably be interpreted as threatening a claim of litigation against Attorney Shahi personally. The letter simply asked Attorney Shahi to do what he had already claimed to have done: remove plaintiff's lien from the land records.[8]

¶ 37. ▮ As we have noted in the past, "disqualification of counsel is only one of several avenues available to a court . . . and it is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Cody*, 2005 VT 116, ¶ 23 (quotation omitted). The trial court could have reasonably concluded that any potential for conflict in this situation was out-

---

[8] Plaintiff has not argued that RSC's representation of CSA's insurer would materially impact RSC's representation of either client, so we do not reach the second provision of Rule 1.7.

weighed by landlord's right to choose its own counsel. *Stowell*, 169 Vt. at 632, 739 A.2d at 1212 (explaining that in considering whether to disqualify attorney, court must be "solicitous of a client's right freely to choose his counsel" and mindful that client may suffer loss of time and money in finding new counsel, as well as benefit of counsel's familiarity with case (quotation omitted)). It therefore did not err in denying plaintiff's motion to disqualify RSC from the case.

*The case is affirmed in all respects except for the award of deposition costs, which is reversed and remanded for recalculation consistent with this decision.*