Filed 11/19/24


VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT  05401
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23–CV-02499

| Robin Lawson v. Dr. John Martell & Associates, et al |
|---|

### DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Robin Lawson sues Dr. John Martell and Dr. John Martell & Associates ("Dr. Martell") for negligence in their treatment of a retinal tear. After the close of discovery, however, she has no expert. Accordingly, Dr, Martell moves for summary judgment. The court grants the motion.

The material facts are undisputed. From 2019 to 2020, Ms. Lawson was a patient of Dr. Martell, a licensed optometrist. She alleges that he failed properly to examine and diagnose signs of a retinal tear before she suffered a retinal detachment, which led to two retinal detachment surgeries and complications caused by allergies to medications. While Dr. Martell denies these allegations, his motion rests on Ms. Lawson's inability to prove any of the elements of her claim without expert testimony. The time for disclosure of an expert has long since come and gone, leaving Ms. Lawson with only her own lay testimony to prove her claim.

While Dr. Martell, as an optometrist, is not within the categories of health care providers listed in 12 V.S.A. § 1908, the parties agree that the standards enunciated there apply to this case. *See* Mot. For Summ. J. at 3–4; Mem. in Opp. to Mot. for Summ. J. at 5–6. Thus, to prove her claim, Ms. Lawson must "produce[] expert . . . testimony setting forth: (1) the proper standard of medical skill and care; (2) that the defendant's conduct departed from the standard; and (3) that this conduct was the proximate cause of the harm complained of." *Senesac v. Assocs. in Obstetrics & Gynecology*, 141 Vt. 310, 313 (1982); *see generally Estate of Fleming v. Nicholson*, 168 Vt. 495, 497 (1998) ("Generally, negligence by professionals is demonstrated using expert testimony to: (1) describe the proper standard of skill and care for that profession, (2) show that the defendant's conduct departed from that standard of care, and (3) show that this conduct was the proximate cause of plaintiff's harm."). To prove proximate cause, " 'the plaintiff must prove that as a result of the defendant's conduct the injuries would not otherwise have been incurred, and therefore an act or omission of the defendant cannot be considered a cause of the plaintiff's injury if the injury would probably have occurred without it.' "

*Bittner v. Centurion of Vt., LLC*, 2021 VT 73, ¶ 29, 215 Vt. 475 (quoting *Wilkins v. Lamoille Cnty. Mental Health Servs., Inc.*, 2005 VT 121, ¶ 10, 179 Vt. 107).

The reason courts generally require expert testimony in medical malpractice cases is because " '[t]he human body and its treatment are extraordinarily complex subjects requiring a level of education, training and skill not generally within our common understanding.' " *Taylor v. Fletcher Allen Health Care*, 2012 VT 86, ¶ 9, 192 Vt. 418 (quoting *Noyes v. Gagnon*, No. 2007-311, 2008 WL 2811231, at *2 (Vt. Feb. 6, 2008) (unpub. mem.)). An exception to this rule exists only " 'where the violation of the standard of medical care is so apparent to be comprehensible to the lay trier of fact.' " *Id*. (quoting *Senesac*, 141 Vt. at 313) (quotation omitted)). Clearly, however, that exception cannot apply here. The average layperson has no way of knowing the standard of care applicable to an optometrist with regard to diagnosis and treatment of a retinal tear—indeed many laypersons might not know even what the retina is, much less how to diagnose and treat a retinal tear. Equally, the average layperson lacks the knowledge or experience to determine the consequences of a failure to diagnose and treat a retinal tear, such as would be required to establish proximate cause. In short, there is no question that optometric care and the standards applicable to the signs, care, and treatment of retinal tears, or the consequences of deficiencies of such care, are not within the common knowledge of lay jurors.

Ms. Martell's answer to this observation is no answer at all. She argues that her case "is exempt from the general rule regarding expert testimony as per the doctrine of *res ipsa loquitur* where in 'the thing speaks for itself.' " Mem. in Opp. to Mot. for Summ. J. at 2. She fails to demonstrate, however, what the thing is, and what it has to say.[1] Instead, she asserts baldly, "In the instant case, 'the violation from the standard of medical care is so apparent to be comprehensible to the lay trier of fact.' " *Id.* at 3 (quoting *Senesac*, 141 Vt. at 113). How, one wonders, is the lay trier of fact to know what are the signs of a retinal tear, whether and when they would have been apparent to a competent optometrist, and

---

[1] A plaintiff relying on *res ipsa loquitur* to establish negligence must demonstrate the following:
    1. A legal duty owing from the defendant to exercise a certain degree of care in connection with a particular instrumentality to prevent the very occurrence that has happened.
    2. The subject instrumentality at the time of the occurrence must have been under the defendant's control and management in such a way that there can be no serious question concerning the defendant's responsibility for the misadventure of the instrument.
    3. The instrument for which the defendant was responsible must be the producing cause of the plaintiff's injury.
    4. The event which brought on the plaintiff's harm is such that would not ordinarily occur except for the want of requisite care on the part of the defendant as the person responsible for the injuring agency.
*Lasek v. Vermont Vapor, Inc.*, 2014 VT 33, ¶ 16, 196 Vt. 243. Consideration of these elements makes clear that the doctrine cannot apply in the context of this case. In any event, Ms. Martell has demonstrated none of the elements.

what that optometrist should have done if presented with those signs? Equally, how is the lay trier of fact to know what are and are not the probable consequences of any failure in this regard? The burden to answer these questions falls squarely on Ms. Lawson. *See Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112 ("Once a claim is challenged by a properly supported motion for summary judgment, the nonmoving party may not rest upon the allegations in the pleadings, but must come forward with admissible evidence to raise a dispute regarding the facts.") (citing *Alpstetten Ass'n, Inc. v. Kelly*, 137 Vt. 508, 514 (1979)). Her failure to offer more than assertions unsupported by evidence is fatal.[2]

## ORDER

The court grants the Motion for Summary Judgment. The separate judgment required by V.R.C.P. 58 will issue forthwith. Defendant shall submit its verified bill of costs within 14 days of the entry of this Order.

Electronically signed pursuant to V.R.E.F. 9(d): 11/18/2024 4:18 PM

_____
Samuel Hoar, Jr.
Superior Court Judge

---

[2] In her Opposition, Ms. Martell argues that "Dr. Martell's own production of the American Optometric Association Clinical Practice Guidelines for Retinal Detachment and Related Peripheral Vitreoretinal Disease and Clinical Practice Guidelines for Comprehensive Adult Eye and Vision Examination establishes the standard of care and his departure from it." Mem. in Opp. to Mot. for Summ. J. at 3. She fails properly to demonstrate, however, how the supposed failure to comply with those guidelines caused any of her claimed injuries. More importantly, the guidelines themselves expressly state, "Recommendations made in this guideline do not represent a standard of care." Exh. 3 to Ms. Lawson's Opposition at 14.