Filed 12/19/24

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-04534

| Andrew Balentine v. George Howard, d/b/a Northeast Service Center |
| --- |

## Findings, Conclusions, and Order

This case came before the court for a bench trial on November 25, 2024. Plaintiff Andrew Balentine was represented by Attorney Brice Simon. Defendant George Howard was pro se. For the reasons set forth below, the court will enter judgment for defendant.

## Findings of Fact

During the time relevant to this case, plaintiff worked for himself transporting vehicles across the country. At some point, plaintiff acquired a 2017 GMC Sierra 3500 truck, which he used for his business. In or about the summer of 2022, plaintiff brought his truck to a Jiffy Lube in Oregon for an oil change and servicing. Thereafter, the truck broke down in Idaho in what plaintiff described as a "catastrophic" failure. Nonetheless, plaintiff managed to get the truck to Vermont where, in September 2022, he brought it Northeast Service Center in Hardwick, which has been owned and operated as a sole proprietorship by defendant George Howard for the least forty years.

Plaintiff requested that defendant examine the four-wheel drive on the truck, which was not working, and check all the fluids. Defendant observed that the transfer case, differential, and radiator had all been topped off with incorrect fluids. Defendant charged plaintiff for labor and issued a receipt indicating that incorrect fluids had been used, so that plaintiff could make an insurance claim, which he did. Plaintiff's truck had 161,000 miles at the time of this service.

In May 2023, plaintiff brought the truck back to defendant's shop for an oil change. The truck now had over 207,000 miles on it. Defendant changed the oil and replaced the filters and charged plaintiff $355. After plaintiff drove the truck for 10,000 miles over the next several months, he noticed a ticking sound. In July 2023, he took the truck to a dealership repair shop and was told that the engine needed to be replaced at an estimated cost of roughly $22,000.

Plaintiff then demanded that defendant pay the replacement cost and accused defendant of having put the wrong oil in his truck in May 2023. Plaintiff claimed that this is why his engine now needed to be replaced.

The receipt defendant's shop prepared in May 2023 indicates that defendant put Rotella T6 5W40 synthetic oil in plaintiff's truck. The owner's manual for the "Duramax Diesel" engine in

the truck cautions to use "only engine oils that have the designation CJ-4 for the diesel engine" and that "[f]ailure to use the recommended engine oil can damage the [diesel particulate filter] and result in engine damage not covered by the vehicle warranty." Exh. 2, at 96. The manual recommends using "15W-40 viscosity grade engine oil" and using "5W-40 to improve cold starting." The manual further contains a graphic indicating that 5W-40 oil is appropriate at temperatures over 100 degrees Fahrenheit.

The parties dispute the oil that defendant's shop put in plaintiff's truck. Plaintiff argues the receipt is accurate and claims that he observed bottles of 5W40 synthetic motor oil be delivered to defendant's shop and used by the mechanic working on his truck. Defendant, through his own testimony and that of his daughter and shop manager Kim Thompson, dispute that account and claims the shop never used 5W40 synthetic unless specially ordered, that they put 15W40 non-synthetic oil in defendant's truck, and that the receipt is incorrect because Ms. Thompson accidentally typed in the wrong code when preparing the receipt. Considering the totality of the evidence presented, the court finds defendant's version of events more credible.

After defendant refused plaintiff's demand to pay the cost of replacing his engine, plaintiff filed this lawsuit alleging claims for negligence, strict product liability, and violations of the Vermont Consumer Protection Act.

**Conclusions of Law**

Plaintiff's claims all fail for multiple reasons.

*First*, and as noted above, the court finds credible the testimony of defendant and Ms. Thompson that they used 15W40 non-synthetic oil—the type of oil plaintiff argues is appropriate—in defendant's truck, and that the May 2023 receipt indicating otherwise contains an error.

*Second*, even if defendant's shop did put 5W40 synthetic oil in plaintiff's truck, plaintiff has failed to prove by a preponderance of evidence that it was harmful to do so, much less that such oil could be considered a defective product for the purpose of a strict liability claim. *See Farnham v. Bombardier, Inc.*, 161 Vt. 619, 620 (1994) ("To establish strict liability in a products liability action, a plaintiff must show that the defendant's product (1) is defective; (2) is unreasonably dangerous to the consumer in normal use; (3) reached the consumer without undergoing any substantial change in condition; and (4) caused injury to the consumer because of its defective design." citing Restatement (Second) of Torts § 402A)). The owner's manual for plaintiff's engine expressly states that 5W40 oil should be used in the truck when it is cold and contains a graphic indicating it is appropriate to use such oil in warmer climates as well. Nowhere does the manual warn against using synthetic motor oil. Nor has plaintiff argued or put forward any evidence that 5W40 synthetic oil is not designated as "CJ-4," which is the only actual relevant requirement identified in the manual.

*Third*, even if defendant's shop put 5W40 synthetic oil in the truck *and* the oil was potentially harmful to the engine, plaintiff has failed to prove by a preponderance of evidence that the oil actually caused his engine to fail. The truck had over 200,000 miles on it when

defendant changed the oil, the truck previously experienced a "catastrophic" failure based on a different mechanic's apparently faulty servicing, and plaintiff drove the truck for 10,000 miles without incident after defendant's oil change. Plaintiff has not established causation, and even if he had, the doctrine of *res ipsa loquitur* cannot be applied to these facts. *See Lasek v. Vermont Vapor, Inc.*, 2014 VT 33, ¶ 17, 196 Vt. 243, 252 ("The doctrine of res ipsa loquitur allows an inference of *negligence* in certain cases, not causation. Established causation is a prerequisite to the application of the doctrine."); *Gentles v. Lanctot*, 141 Vt. 396 (1985) (applying doctrine where "[t]he uncontroverted evidence discloses that defendant was exercising exclusive control over the welding equipment, which was in operation at the time and place of origin of the fire that destroyed plaintiff's car," and that "[a]fter the fire, defendant told plaintiff, 'Well, I burned your car'").

Finally, and for similar reasons, plaintiff has failed to prove a right to damages under the Consumer Protection Act. *See Mansfield v. Heilmann, Ekman, Cooley & Gagnon, Inc.*, 2023 VT 47, ¶¶ 32-34 (to recover damages in a private claim under the act, a plaintiff must prove facts that meet the definition of an unfair or deceptive act, causation, and injury).

### Order

The court will enter judgment in favor of defendant on plaintiff's claims.

Electronically signed on: 12/18/2024 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

John S. Hall
Assistant Judge

Electronically signed pursuant to V.R.E.F. 9(d)

_____
Merle L. Haskins
Assistant Judge